PARSONS v. DETROIT & MACKINAC RAILWAY CO.

DEEDS—CANCELLATION—RAILROADS—RIGHT OF WAY.

A deed to a railroad company of right of way, absolute upon its face, will not be set aside, where neither fraud nor mistake as to its terms is shown, on account of the company's moving its depot to a point some distance from the land conveyed, though the grantor's belief that a depot would be maintained near by was the principal reason for his giving the deed.

Appeal from Bay; Maxwell, J. Submitted November 16, 1899. Decided December 21, 1899.

Bill by Edwin M. Parsons against the Detroit & Mackinac Railway Company to set aside a deed. From a decree for complainant, defendant appeals. Reversed.

*Porter & Haffey,* for complainant.

*T. A. E. & J. C. Weadock,* for defendant.

LONG, J.   Complainant was the owner of the S. E. ¼ of the S. E. ¼ of section 35, township 16 N., range 4 E., Bay county, and other lands adjoining the same on the west, including portions of the plat of the village of Linwood. Defendant was constructing an extension of its railroad from Omer, Arenac county, to Bay City, Bay county, and in surveying its route had crossed the land above described. The road was not contributed to by the public or local subscribers, and the cost was paid entirely by the company.   The matter of obtaining the right of way was in charge of D. J. Casey, chief engineer, and, when conveyances could not be procured, condemnation proceedings were had.   Mr. Casey employed Messrs. Anderson and Cook to procure options on right of way, and they were instructed to get options wholly without conditions.   On the 23d day of April, 1896, a meeting was held in the village of Linwood, attended by parties from whom it was desirable to procure options for right of way.   At this time it was supposed the railroad would be constructed through the village, and options were being procured on that route.   At this meeting the question was asked of Messrs. Cook and Anderson whether a depot would be constructed in the village of Linwood, to which an affirmative reply was given.   Then some one asked the complainant whether the depot would remain after being erected, and he (the complainant) replied, "Of course it would."   Messrs. Cook and Anderson did not agree to put such a provision in the option, but did state, as a matter of opinion, that, if the depot was erected in the village, it would not be moved; and the complainant states that he understood that such statement was made as a

matter of opinion. After this, and on the same day, a paper prepared by Mr. Cook was signed by the complainant. Neither of the routes for which the preliminary surveys had at that time been made was adopted by the defendant company. Its road did not run through the village of Linwood, but west of it.

When the option came to Mr. Casey's attention, he did not accept it. Complainant was then in the employ of the company, and Mr. Casey had a conversation with him, in which he explained that no deeds of right of way could be taken with conditions as to the erection and maintenance of depots; and Mr. Hewitt, who was in the employ of the company, prepared a deed, and sent it to complainant, who did not sign and return it promptly. In a conversation later with Mr. Hewitt, the complainant said it was not drawn in accordance with the option, and Hewitt told him he had instructions to take nothing but straight deeds without any conditions, and, if there was any question about it, he (complainant) would have to see Mr. Casey. Complainant retained the deed for a time, and on the 16th of October he was asked by letter to execute and deliver it. After that, and prior to the 2d day of November, 1896, which was the day the deed was recorded, the complainant brought it, as prepared by Mr. Hewitt, executed and acknowledged by himself under date of October 2d, and delivered the same to defendant by handing it to Mr. Hewitt. The deed covers the right of way occupied by the defendant company, and the center line of the road, as it goes north, crosses the east line of Mr. Parsons' land about 600 feet south of the north line thereof, and the amount of land taken is one and two-tenths acres, leaving a triangular piece, containing only four-tenths of an acre, belonging to complainant and east of the railroad; or, in other words, the land taken, and all of Parsons' land lying east of the right of way, would amount to one and six-tenths acres.

Mr. Casey testified that the deed was not prepared in reliance upon the option; that the option was never

accepted, and was not turned over to Mr. Hewitt; that complainant was doing all he could to get other lands; that he had a talk.with him, and complainant was willing to give the right of way without conditions; that a depot was originally·erected, and maintained from September, 1896, to July, 1897, at an expense of $351.95; that the receipts of the office were $314.46, or $37.49 less than the expense of maintenance; and that the depot was moved a mile and seven-tenths to the south, to a point known as. "Linwood Beach." There is a station one and a half miles north of the land in question, known as "Lengs-ville."

The testimony was taken in open court, and the court held that the deed was invalid, and required the defendant to go into the probate court with condemnation proceedings, and make a deposit of $250.

The above facts are taken from the brief of counsel for appellant, and are fully sustained by the record. It is evident that the deed was made by complainant with the full understanding of its contents. This deed must control. There is no fraud or mistake claimed. Even if there had been a previous contract, containing the stipulation that a depot should be maintained in the village, such contract would not control the operation of the deed where no fraud or mistake in making the deed appears. *Clifton* v. *Iron Co.*, 74 Mich. 183 (16 Am. St. Rep. 621). But no such thing appears. There was no contract containing such stipulation which was ever approved by the defendant company.

The decree below must be reversed, and a decree entered here dismissing complainant's bill, with costs of both courts.

The other Justices concurred.